IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVOCLAR VIVADENT, INC., | ) |
|         Plaintiff, | ) |
| vs. | ) No. _____ |
| SHENZHEN YURUCHENG DENTAL MATERIAL CO., LTD; AND SHENZHEN YUCERA DENTAL MATERIALS CO., LTD., | ) |
|         Defendants. | ) |

## **COMPLAINT**

Ivoclar Vivadent, Inc. ("Plaintiff" or "Ivoclar"), for its Complaint against Shenzhen Yurucheng Dental Material Co., Ltd ("Shenzhen Yurucheng") and Shenzhen Yucera Dental Materials Co., Ltd. ("Shenzen Yucera") (together, "Defendants" or "Yucera"), alleges as follows:

### **The Parties**

1. Ivoclar is a Delaware corporation with a principal place of business at 175 Pineview Drive, Amherst, New York 14228. Ivoclar is a leading developer and supplier of dental products.

2. Upon information and belief, Shenzhen Yurucheng is a Chinese company with a principal place of business at Zhongcheng Life Science Park, No. 14, Zhongxing Road, Xiuxin Community, Kengzi Street Office, Pingshan District, Shenzhen, China.

3. Upon information and belief, Shenzhen Yucera is a Chinese Company with a principal place of business at Zhongcheng Life Science Park, No. 14, Zhongxing Road, Xiuxin Community, Kengzi Street Office, Pingshan District, Shenzhen, China.

4. Both Shenzhen Yurucheng and Shenzhen Yucera use the trade name "Yucera" when marketing, advertising, and selling goods and services.

## Jurisdiction and Venue

5. This is a trademark infringement action brought under the trademark laws of the United States, including 15 U.S.C. Sections 1114, 1121(a), and 1125(a).

6. Ivoclar seeks damages for trademark infringement and an injunction precluding Defendants from using and infringing Ivoclar's trademark.

7. This Court has subject-matter jurisdiction under 28 U.S.C. Sections 1121(a) and 1125.

8. This Court may exercise personal jurisdiction over the Defendants because, among other reasons, they regularly conduct and solicit business in Illinois and in this District. They market, advertise, and sell goods that infringe Ivoclar's trademark in Illinois and in this District. More specifically, and as further alleged below, they have engaged in acts of trademark infringement in connection with an industry trade show in Chicago, Illinois. They also manage and control an interactive website that enables and encourages customers, including those residing in Illinois and in this District, to purchase goods that infringe Ivoclar's trademark. They have purposefully availed themselves of the privilege of doing business in Illinois and in this District.

9. Venue in this District is proper under 28 U.S.C. Section 1391(b)(2). Defendants have committed acts of trademark infringement in this District.

## The Facts

### I. Ivoclar's Mark

10. Ivoclar owns a trademark for the color purple for use on dental ceramics in milling block form (the "Purple Mark").

11. Ivoclar obtained a federal trademark registration for the Purple Mark under U.S. Registration No. 4,815,646 on September 22, 2015. A copy of the registration is attached as Exhibit 1.

12. Pursuant to 15 U.S.C. Section 1057(b), the registration certificate for the Purple Mark constitutes prima facie evidence of the validity of the registration of Ivoclar's ownership of the trademark set forth therein, and of Ivoclar's exclusive right to use that trademark in commerce and in connection with the products and services specified in the registration certificates.

13. Ivoclar has used the Purple Mark in U.S. interstate commerce since at least as early as November 2005, and it has the exclusive right to use the Purple Mark, nationwide, on its dental ceramic products. Ivoclar markets, advertises, offers for sale, and sells dental ceramic products in connection the Purple Mark. The Purple Mark has acquired distinction, reputation, and goodwill belonging exclusively to Ivoclar.

14. Ivoclar has invested substantial resources to develop, grow, and promote its Purple Mark. As a direct result of Ivoclar's continuous and exclusive use of the Purple Mark, it has become widely known and recognized in the industry as Ivoclar's trademark and as a strong indicator of the source of Ivoclar's goods.

15. By virtue of the duration and scope of Ivoclar's use of the Purple Mark, the expenditure of considerable sums for promotional activities, and by virtue of the excellence of Ivoclar's goods, Ivoclar has obtained for the Purple Mark a most valuable reputation. The Purple

Mark, and the respective goods, have gained substantial recognition and goodwill in the marketplace.

16. The Purple Mark is strong and distinctive and designates Ivoclar as the source of all goods and services advertised, marketed, sold, or used in connection with the mark in the United States. In addition, by virtue of Ivoclar's use of the Purple Mark in connection with its products, and its extensive marketing, advertising, promotion, and sale of its products under that mark, the Purple Mark has acquired secondary meaning, whereby the consuming public of the United States associates the Purple Mark with a single source of products and services.

17. Ivoclar is the senior user of the Purple Mark because it used that mark in interstate commerce prior to any use by Defendants.

## II.     Defendants' Trademark Infringement

18. Ivoclar has never authorized Defendants' use of Ivoclar's Purple Mark.

19. Nevertheless, Defendants knowingly and willfully violated Ivoclar's rights in the distinctive Purple Mark by using the Purple Mark in U.S. commerce and by marketing, advertising, offering to sell, selling, and distributing certain lithium silicate ceramic materials in connection with the Purple Mark in the U.S.

20. For example, Defendants have infringed the Purple Mark by marketing, advertising, and offering to sell lithium silicate products in connection the Purple Mark at an industry trade show in Chicago, as depicted below:



21. In addition, Defendants maintain and control an interactive website, located at https://www.yucera.com/, through which Defendants market, advertise, offer for sale, and sell lithium silicate products in connection with the Purple Mark to customers in the U.S., including in this District. An image from that interactive website, which includes Ivoclar's Purple Mark, as depicted below:



**First Claim for Relief Against Defendants**
**(Trademark Infringement (15 U.S.C. Section 1114))**

22. Ivoclar repeats and realleges the allegations in paragraphs 1-21.

23. Defendants have infringed the Purple Mark by marketing, advertising, offering for sale, selling, and distributing in the U.S. certain lithium silicate ceramic materials in connection with the Purple Mark.

24. Defendants do not have authorization, license, or permission from Ivoclar to market, advertise, offer for sale, sell, or distribute goods in connection with the Purple Mark or to otherwise use the Purple Mark.

25. Defendants' use of the Purple Mark in connection with the marketing, advertising, offering for sale, sale, and distribution of goods in the U.S. is likely to cause confusion, mistake, or deception in the marketplace.

26. Defendants' infringing use violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, because it constitutes willful and deliberate use in commerce of reproductions, copies, or colorable imitations of Ivoclar's federally registered Purple Mark in connection with the sale, offering for sale, distribution, and advertising of Defendants' services in a manner likely to cause confusion, mistake, and deception.

27. As a direct and proximate result of Defendants' wrongful conduct, Ivoclar has been, and will continue to be, damaged.

28. Unless an injunction is issued precluding any continuing or future use by Defendants of the Purple Mark, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to the source or origin of goods, or as to the affiliation, association, or sponsorship by Ivoclar of Defendants.

29. Upon information and belief, Defendants have actual knowledge of the Purple Mark. Defendants were on constructive notice of this mark based on the federal registrations for the mark and Ivoclar's use of the mark in interstate commerce. As a result, Defendants' unauthorized use of such mark on, and in connection with, the marketing, advertising offering for sale, selling, or distributing of goods has been knowing, intentional, and willful.

30. Defendants' activities have caused, and will continue to cause, irreparable harm to Ivoclar, for which there is no adequate remedy at law, in that: (i) the Purple Mark comprises unique and valuable property rights; (ii) Defendants' infringement interferes with and impinges on Ivoclar's goodwill and customer relationships and will substantially harm Ivoclar's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Ivoclar, are continuing. Accordingly, Ivoclar is entitled to injunctive relief.

31. Pursuant to 15 U.S.C. Section 1117(a), Ivoclar is entitled to an order: (i) requiring Defendants to account for any and all profits derived from its actions, to be increased in accordance with applicable provisions of law; and (ii) awarding all damages sustained by Ivoclar that were caused by Defendants' conduct.

32. Defendants' actions make this an exceptional case under 15 U.S.C. Section 1117(a), and Ivoclar is entitled to an award of attorneys' fees.

**Second Claim for Relief Against Defendants**
**(Unfair Competition/False Designation of Origin (15 U.S.C. Section 1125(a))**

33. Ivoclar repeats and realleges the allegations set forth in paragraphs 1-32.

34. The Purple Mark is strong and distinctive and designates Ivoclar as the source of all goods and services advertised, marketed, sold, or used in connection with the mark. In addition, by virtue of Ivoclar's use of the Purple Mark in connection with its products, and its extensive marketing, advertising, promotion, and sale of its products under that mark, the Purple

Mark has acquired secondary meaning, whereby the consuming public of the U.S associates the Purple Mark with a single source of products and services.

35. Ivoclar is the senior user of the Purple Mark because it began using the mark in interstate commerce prior to any use by Defendants, and Ivoclar continues to use the Purple Mark.

36. Upon information and belief, through its unauthorized use of the Purple Mark, Defendants intended to and did in fact confuse and mislead consumers into believing, and misrepresented and created the false impression, that Ivoclar somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the Purple Mark.

37. In fact, there is no connection, association, or licensing relationship between Ivoclar and Defendants, nor has Ivoclar ever authorized, licensed, or given permission to Defendants to use the Purple Mark.

38. Defendants' unauthorized use of the Purple Mark will likely cause confusion as to the origin, sponsorship, approval, and authenticity of goods, and any related services, and will likely cause others to believe mistakenly that there is a relationship, affiliation, connection, or association between Defendants and Ivoclar.

39. Defendants' infringing use violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant have willfully and deliberately used in commerce words, terms, names, and/or false designations of origin that have caused confusion and mistake as to the origin, sponsorship, or approval by Ivoclar of goods and services promoted by Defendants.

40. Defendants' conduct constitutes unfair competition, false designation of origin, and infringement of Ivoclar's Purple Mark.

41. As a direct and proximate result of Defendants' wrongful conduct, Ivoclar has been, and will continue to be, damaged.

42. Defendants' activities have caused, and will continue to cause, irreparable harm to Ivoclar, for which there is no adequate remedy at law, in that: (i) the Purple Mark comprise unique and valuable property rights; (ii) Defendants' infringement interferes with and impinges on Ivoclar's goodwill and customer relationships and will substantially harm Ivoclar's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Ivoclar, are continuing. Accordingly, Ivoclar is entitled to injunctive relief.

### Third Claim for Relief Against Defendants
### (Common Law Trademark Infringement)

43. Ivoclar repeats and realleges the allegations set forth in paragraphs 1-42.

44. Defendants' unauthorized use of the Purple Mark constitutes trademark infringement and unfair competition under common law.

45. Ivoclar is the prior user of the Purple Mark, and Defendants' willful and deliberate use of the Purple Mark in commerce is likely to cause, and may have already caused, confusion, mistake, and deception as to origin, sponsorship, or approval by Ivoclar.

46. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

47. Defendants' unlawful conduct has and will continue to cause irreparable damage to Ivoclar, for which Ivoclar has no adequate remedy at law.

48. Unless enjoined, Defendants will continue the conduct, further injuring Ivoclar and confusing the public.

49. Defendants have received revenues and profits as a result of their unlawful conduct, to which Defendants are not entitled, and Ivoclar has also suffered damages as a result of such unlawful conduct, for which Defendants are responsible.

### Jury Demand

50. Plaintiff demands trial by jury on all matters triable by jury.

**WHEREFORE**, Ivoclar is entitled to judgment with the following relief:

(1) a declaration that Defendants have infringed the Purple Mark;

(2) an injunction, precluding Defendants, their officers, directors, agents, servants, employees, attorneys, subsidiaries, affiliates, and all those acting in concert with them, from infringing the Purple Mark;

(3) an accounting for damages arising from Defendants' acts of trademark infringement.

(4) actual damages in an amount to be determined at trial;

(5) a finding that Defendants' trademark infringement is willful, that this is an exceptional case, and an award of special damages and reasonable attorneys' fees to the Plaintiffs;

(6) any further relief that this Court deems just and proper.

Dated: February 22, 2024  Respectfully submitted,

/s/Michael J. Kelly
Michael J. Kelly, ARDC No. 3128055
PORTER WRIGHT MORRIS & ARTHUR LLP
321 N. Clark Street, Suite 400
Chicago, IL  60654
Telephone: (312) 756-8500
Facsimile: (312) 444-9287
Email: MJKelly@porterwright.com

<u>/s/Robert J. Fluskey, Jr.</u> (*pro hac vice* forthcoming)
Robert J. Fluskey, Jr.
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 848-1688
Facsimile: (716) 819-4718
Email: rfluskey@hodgsonruss.com

23848389